Good morning and welcome to the Ninth Circuit. We are pleased to have Judge Richard Beddett of the District of Maryland sitting with us today. We will hear the cases in the order they appear on the calendar. The appellant or petitioner, as usual, can reserve time, but we will not watch your time for you. Why don't we begin with the first case in the calendar submitted on the briefs for Achilles v. Garland. So we will begin with the second, Aquino v. Mayorkas. Good morning, your honors. May it please the court, counsel, ladies and gentlemen. This case, there's two issues raised on appeal in this case. The first issue deals with the tolling of the requirement to request EEO counseling within 45 days. In this case, it's simple that the court just can't disregard 29 CFR 1614.105.82 because it feels that it swallows the exception, swallows the rule. That's the rule that was laid out by the legislature, and it has to be followed. It's not the legislature, is it? Sorry? It's not the legislature. It's a CFR rule. Well, that's the rule. Whomever laid it out— I'm just correcting you. You said it was laid out by the legislature. It wasn't laid out by the legislature. You're correct, your honor. All right. What language are you relying on? Well, the language from 1614.82 that says the agency or the commission shall extend the 45-day time limit when the individual shows that he or she was not notified of the otherwise aware of them during the period. And I think if you read that in light of the Green case and the Ho case, you'll see that Green says that in order for a case to be right, an accident to be right, you have to know about the— I don't understand. Wait. She wasn't notified of the time limit? What do you mean by that? Well, in this case, Mr. Aquino, while he knew that he was terminated, he did not know that there was a discriminatory action behind the termination until— And in fact, the facts that he is relying upon, i.e., that somebody—he says that somebody else was fired—was not fired, hadn't occurred yet when he was fired. Is that right? That's correct, your honor. And hadn't occurred within the 45-day period either. I'm not sure of that because Ms.— I'm not sure of that, your honor. Well, I'm pretty sure that the time had run, okay? So, what does that mean? It means that—suppose it was five years later and he hadn't heard of it and somebody was now not fired. Well, the regulation raises an issue of—or has in it a requirement for reasonableness. And I think in light of the Ho case, where Ms. Ho—it was a year after the discriminatory action that Ms. Ho found out about the discriminatory—that it was discriminatory. Ho was an unpublished decision, is that right? It is, your honor. Okay. Well, in the Ho case, that addressed a grievance rather than a termination, did it not? She was still employed. It was just a grievance matter in terms of the waiver and the reasonableness of the time period. It was not a termination of Ms. Ho. Isn't that correct? Right, but it's the same aspect of the 45 days to request the EEO counseling. Well, it's subject to a different deadline, though. It's a totally distinguishable situation from someone becoming intoxicated and involved in this kind of an assault and the time period and ultimately resulting in a termination as opposed to the grievance involved in Ho is the point I'm asking you. I would disagree. Obviously, that's my position because if you look at Mr. Barnes, the comparator in this case, that Mr. Barnes was accused of kidnapping and domestic violence and was able to keep his job. So while that's a horrible thing that Mr. Aquino did and we don't dispute that, it's not as horrible as what Mr. Barnes did and it's not reason—well, it's not reason to fire Mr. Aquino unless there's some discriminatory intent involved. Well, the alleged comparator, Mr. Barnes, apparently the record is undisputed that he took proactive steps to correct his behavior, attended a substance abuse program before any agency discipline was even imposed, whereas the undisputed record reflects that Mr. Aquino attended one Alcoholics Anonymous meeting and that was it. Isn't that correct? Isn't that what the record reflects? Yes, Your Honor, but Mr. Aquino wasn't—his crime wasn't being drunk. His crime was vandalism and he paid—he was told to pay restitution on the vandalism and he paid the restitution and he's led a more or less blameless life. Well, does not the record also reflect that there were three other non-supervisory officers holding similar positions as Mr. Aquino who were identified as either Hispanic or African-American and they were removed by the same official who removed Mr. Aquino? Does not the record also reflect that? Yes, Your Honor. Okay. So the comparator is somewhat weak, is it not, in terms of the comparator as to Mr. Barnes? It's weaker, but I don't—I think it's still a comparator. I think there's still the racial difference and the difference in treatment, more favorable treatment of Mr. Barnes, I think, and the less favorable treatment of Mr. Aquino shows that there's a racial animus towards Mr. Aquino racially. And I think that Mr. Barnes maybe got more favorable treatment because of his race and that's a problem, too, I think. And with respect to the second aspect of the appeal, whether Mr. Aquino had a satisfactory performance, the record shows that he had— Is that the McDonald's standard, that he has to have a satisfactory performance? I suppose I thought the McDonald's standard, insofar as it applies here, and it's only a way of proving something, there are other ways, it has to demonstrate that he was qualified, which usually is taken to mean, you know, did he have the requisite qualifications for the job? And the rest of it goes into the later parts of the analysis. So I don't—I think you're taking on too much to demonstrate that he—he obviously didn't— he met their standards. I don't think belongs in this part of the analysis anyway. If we qualified, he was clearly qualified for the job as he has four years of exemplary performance evaluation. And the rest of it, whether or not he was qualified, it goes to the employer's explanation for the firing, i.e., he was drunk and had a conviction and he wasn't—we couldn't keep him as a TSA agent and then—or whatever he was, a DHA employee, and then the rest—then that goes to pre-check. So I—I mean, I think you're on strong ground on this issue. But the other one's the problem. Well, Your Honor, I think that the cases are—this is analogous to Ho, and I think if you look at the Green case— All right, Green is an unpublished opinion, okay? So let's go on from there. Well, there are two elements to the discriminatory— In other words, you have to argue it directly. You can't argue it through Ho. So tell me why the language of this regulation applies—doesn't preclude this timeframe, particularly given the fact that the facts didn't even exist during the timeframe. Well, given the fact that the regulation says he or she did not or reasonably should not have known that the discriminatory matter or the personnel action occurred, clearly Mr. Aquino knew of the personnel action, but he didn't know that it was discriminatory until he saw how Mr. Barnes was treated. And that's—and I think that's right on what the regulation talks about in this. And I don't think that you can disregard that by saying it swallows the 45-day limit. Okay, do you want to reserve any time? I'll reserve the minute and 20 seconds, Your Honor. Okay, go ahead. Good morning, Your Honor. May it please the Court. My name is Sarah Quist, and I represent Defendant Appellee Alejandro Mayorkas. Plaintiff Aquino's request for reversal is wrong for two reasons. First, there's no dispute that he did not contact the EEO counselor within 45 days. Second, he did not meet the prima facie case or establish pretext. First, plaintiff's argument that the claim accrues when he learned of a potential comparator rather than when he learned of his removal is contrary to the applicable regulation, to case law, and it's unworkable. It's contrary to the regulation that was being spoken of earlier, 29 CFR 1614.105, because on its face, for personnel actions, the employee must contact the EEO counselor within 45 days of the effective date of that action. And here, clearly, personnel action was taken when Mr. Aquino was removed. There's no dispute that Mr. Aquino knew about that date. May I ask a question of you? Yes, sir. I'm reading 1614.105A2, and it says, the agency or the commission shall extend the 45-day time limit in paragraph A1 of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter of personnel action occurred. Doesn't that give a tolling right until Mr. Aquino knew or should have known of the favorable treatment of Mr. Barnes? I disagree because the language is either about the matter or the personnel action. And here, the issue is about a personnel action. And should tolling be allowed until the matter is known, that would be tolling until the legal injury was known. And the Ninth Circuit has already decided that that's not when a claim accrues, both in Lyons in the Lukowski case in 2008 and in the Mulligan case in 2018. The court looked at whether the claim accrued when they knew of the actual wrong, such as the personnel action or the legal wrong, and the court clearly came down on the side of the 45 days starts to run at the time of the legal wrong. For instance, in Mulligan, an EEO judge brought an accommodations action and argued that the 45 days should run when she learned about the discriminatory animus behind the denial of accommodations. And the court disagreed and said the 45 days ran from the discrete act, which was when the accommodations were denied. So what plaintiff is asking, in essence, is for the claim to accrue or for tolling to be based upon learning about the legal injury. And this is contrary to the case law. In addition, for the reasons that have been stated earlier, HOE isn't applicable here for four reasons. It's unpublished. It's inconsistent with the case law, including Mulligan, that was decided after HOE. And it's distinguishable in what's already been addressed. It's about a matter. It's about pressure to return from light duty for a postal employee, whereas this case is clearly about personnel action or removal. And lastly, the tolling, as plaintiff is requesting, is simply unworkable. Agencies and organizations are making employment decisions at all times on a continuing basis. Well, I mean, the real problem here is that you have a 45-day period. The usual period for a Title VII case is, I think, six months. So it's not unworkable. Everybody else seems to work under it. The problem is that it's such a short period that collecting enough information to know whether you actually have any kind of a case is pretty difficult. Now, I mean, I'm very influenced by the fact that, in this instance, the information hadn't even occurred yet. But leaving that aside, if it had occurred, being able to do a survey of what had happened to other people within that 45 days isn't particularly doable, actually. So I guess what you're going to have, if you're tough about this, is a lot of sort of protective filings where people then go try to figure out what their case is because otherwise they're out the door. That may be the case, Your Honor. Here, the plaintiff did believe that his removal was unfair from the very beginning. And indeed, he appealed to the professional responsibility within his 30-day requirement. And had he appealed through the EEO, or had he spoken to the EEO counselor, his argument that it was unfair could have been researched and looked into more. And at that time, the different people who had been disciplined for off-duty misconduct by this particular decider could have been researched. And so he need not have known about the information in order to make the claim. The information actually didn't exist. Am I right about that? That's correct. So he couldn't have researched and found it. And I suspect that if, for example, this was a Title VII, a private case, if somebody shortly thereafter were treated differently, he could have brought that up. So another consequence of this is limiting the number of indices of the discriminatory animus that are even not only discoverable but usable as to when they exist. So the practicalities are at least on both sides. And the question is, is this nonetheless an extremely tough-minded provision that doesn't allow any room for wiggle? That's really your argument. That's correct, Your Honor, and especially in this case where it's very clear. In addition, this particular comparator that is being pointed to is not a valid comparator for a whole host of reasons. First, the comparator was a supervisor, whereas plaintiff was not. And in the Vasquez case, the Ninth Circuit said that supervisors ordinarily are not similarly situated with lower-level employees. Moreover, the comparator had 11 years of experience, whereas plaintiff had three. The misconduct was very different. I respectfully disagree with plaintiff's counsel about how the misconduct was characterized, but the courts have looked at what the misconduct was itself when comparing. Does this issue even arise at the first stage? McDonnell Douglas, first of all, is not an element of a cause of action. It is a way of determining, one of several ways of determining discriminatory intent. Right? It is not an element of a cause of action, and it is an extremely, and the first prong of it just sets up the inquiry. It's extremely narrow, is it not? For a similarly situated, the fourth prong of McDonnell Douglas, it's a minimal standard to meet. Right, so therefore, the fact that he was qualified for his job and was fired is essentially sufficient for that prong. Now, that doesn't mean that he can get through the rest of the analysis or that he has proven discriminatory intent. Really, it all comes down, in this case, likely to the pretext inquiry, and it almost surely was not a pretext. But I don't see why we're lumping this all into the first McDonnell Douglas prong. I don't think it goes there. Well, I believe that the court has looked at misconduct under the second element of whether the employee was performing according to the agency's legitimate expectations. But if, for example, he really had the misconduct, but as he claims, other people who had the same misconduct were not fired, he could still prove his discriminatory intent, whatever you do with McDonnell Douglas. Suppose there were ten people, and the only person who was fired, and they all were involved in the same incident, and only the black person was fired. Does he lose because he can't establish the first McDonnell Douglas prong? Of course not. That might be a different situation, Your Honor. Here, the misconduct was not the same, and courts have looked and compared misconduct when deciding whether it's the same way. That's right, but not at the first prong. I mean, we're backing the whole analysis up into the wrong place, it seems to me. And the way this ought to go is he was qualified for his job. The employer articulates a reason, i.e., everything he did and his conviction and everything. He tries to prove pretext, and he can't prove pretext, presumably. But I don't know why we're all backing the whole thing up into the first prong. Perhaps we need not, but, for instance, in the Aloha Island Air case, the court did question, when an employee committed misconduct on the job, whether or not they could satisfy prong two for a prima facie case. So that may be the case. I see that my time is up. Thank you very much. Thank you. Thank you. Hopefully I'll finish this in a minute and 19, Your Honors. So with respect to Lukosky and the cases that the defendant cites in this, Lukosky doesn't address the issue of tolling. Well, it establishes when the claim arrives. You're not claiming tolling, as I understand it. Your argument is not a tolling argument. It's an accrual argument. So why isn't Lukosky binding? I think it was decided before Green versus Brennan, which says that there's two parts to an employment action. One is the personnel action, and two, the discriminatory action. And that while he knew, you have to know about both. And that's the case that Ho, I understand that it's an unpublished case. But that's the case that Ho says, here, we'll look at this when the action accrued. Or Green looks at when the action accrued, and then Ho looks at when they learned of the discriminatory action. And I think you have to put those two things together, and then you have an action. Well, you face a heightened burden once you get to the area of trying to prove a pretext, do you not? It's a heightened burden. Presuming there is a prima facie case, it's a heightened burden, is there not? I agree, Your Honor. Yes, it's a heightened burden. It's harder to make. But I think for the purposes of summary judgment, that we've laid out enough circumstantial evidence of the pretext that we get through summary judgment. I'm past my time. Okay, thank you very much. Thank you very much, ladies and gentlemen. Thank you both for your arguments. The case of Aquino v. Mayorkas is submitted.
judges: BERZON, BEA, Bennett